

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 1, 2023

**BY ECF**
The Honorable George B. Daniels
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:  *United States v. Kadeem Dean*, 21 Cr. 09 (GBD)

Dear Judge Daniels:

The Government respectfully submits this letter in advance of sentencing in the above-captioned case, currently scheduled for Thursday, June 8, 2023, at 10:00 a.m. (Dkt. No. 57.) For the reasons explained below, although the parties stipulated to a Guidelines range of 27 to 33 months' imprisonment in the Plea Agreement, given the defendant's additional criminal history since pleading guilty in this case, the Government, consistent with the terms of the Plea Agreement, now calculates the defendant's Guidelines range to be 30 to 37 months' imprisonment (the "Guidelines Range"). A sentence within that Guidelines Range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

A. Offense Conduct

On June 1, 2020, at approximately 4:00 a.m., the defendant and an unidentified co-conspirator ("CC-1") entered a Rite Aid store in Manhattan and robbed the pharmacy of oxycodone pills. During the robbery, CC-1 told the pharmacist that CC-1 had a gun, instructed the pharmacist to open the safe located behind the counter, and demanded that the pharmacist give CC-1 "oxy." The defendant served as the lookout during the robbery. Immediately after CC-1 took the pills, he and the defendant ran out of the store and drove off together. One of the bottles that CC-1 and the defendant stole contained a GPS tracker, which allowed law enforcement to track down and locate the car. Inside the car was the defendant's driver's license and a pill bottle cap. In total, the defendant and CC-1 stole approximately $2,676.62 dollars' worth of oxycodone pills.

B. Procedural Posture

On or about November 9, 2020, the defendant was charged by Complaint with a robbery involving controlled substances, in violation of Title 18, United States Code, Sections 2118(b) and 2, and a warrant was issued for his arrest. On or about December 10, 2020, the defendant was

arrested and presented before the Honorable Sarah Netburn, United States Magistrate Judge for the Southern District of New York. After a bail argument, the defendant was released on certain conditions, which have been modified at various times during this case.

On or about January 7, 2021, the defendant waived his right to proceed by indictment and was charged by Information with (1) one count of conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951 (Count One), and (2) one count of Hobbs Act robbery, in violation of Title 18, United States Code, Sections 1951 and 2 (Count Two). On February 15, 2022, pursuant to a Plea Agreement with the Government, the defendant pleaded guilty to Count One of the Information. The Plea Agreement, which predated the two convictions discussed below, calculated a Guidelines offense level of 17 and a criminal history category of II.

While this case was ongoing, the defendant was also being prosecuted for other federal crimes—namely fraud and aggravated identity theft offenses—in the Northern District of Illinois. On or about February 8, 2023, the defendant pled guilty in that case to conspiracy to commit wire fraud and aggravated identity theft. On or about May 3, 2023, the defendant was sentenced in that case to 60 months' imprisonment for conspiracy to commit wire fraud, followed by the mandatory 24 months' imprisonment for aggravated identity theft, and remanded into federal custody.

In addition, in or about 2023, the Government learned that the Queens District Attorney's Office was prosecuting the defendant for an armed robbery and carjacking that he committed on or about August 28, 2022—that is, while the defendant was out on pretrial release in this case. Based on discussions with the prosecutor in that case, it is the Government's understanding that on or about August 28, 2022, the defendant and two co-conspirators stole a vehicle from a victim at gunpoint. The defendant and each of his co-conspirators possessed a firearm. The vehicle was recovered in Brooklyn shortly thereafter. Video surveillance obtained in the course of that investigation shows the defendant exiting the victim's vehicle in the same clothing that the victim had described the perpetrator as wearing and the defendant's DNA was found on the steering wheel of the stolen vehicle. The defendant was arrested in that case on or about March 29, 2023, and charged by complaint with various offenses, including robbery in the first degree with use of a firearm. On or about April 28, 2023, the defendant pled guilty to robbery in the second degree in New York state court. He is currently scheduled to be sentenced on June 5, 2023, and is facing a possible term of imprisonment of three-and-a-half years.

The defendant is currently in BOP custody at the MDC, awaiting his sentencing in this case.

### C. The Presentence Investigation Report and the Plea Agreement

On June 23, 2022, the U.S. Probation Office ("Probation") completed the Presentence Investigation Report (the "PSR").[1] The PSR calculates a Guidelines range of 30 to 37 months' imprisonment, based on an offense level of 18 and a criminal history category of II, and recommends a sentence of 24 months' imprisonment. The Guidelines calculation in the PSR

---

[1] Over the past year, the defendant has sought, and the Court has granted, adjournments of the defendant's sentencing in this case while the other federal case was pending.

differs from the Guidelines calculation in the Plea Agreement because the former includes a one-level increase from the base offense level because a controlled substance was taken in the instant offense and the taking of a controlled substance was an object of the offense, pursuant to U.S.S.G. § 2B3.1(b)(6). The Government agrees that the one-level increase should apply, but consistent with the terms of the Plea Agreement and the Guidelines stipulated to by the parties, the Government's Guidelines calculations is based on an offense level of 17.

Neither the criminal history in the PSR nor in the Plea Agreement reflect the additional federal sentence that has been imposed against the defendant since he pled guilty in this case. As noted above, on or about May 3, 2023, the defendant was sentenced in the Northern District of Illinois to 60 months' imprisonment for conspiracy to commit wire fraud, followed by 24 months' imprisonment for aggravated identity theft. Pursuant to the Plea Agreement, which provides that "nothing in this Agreement limits the rights of the parties . . . (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above," the Government now recalculates the defendant's criminal history category to account for the federal sentence in Illinois. Pursuant to U.S.S.G. § 4A1.1(a), the May 2023 federal sentence results in three criminal history points. Thus, the defendant now has a total of five criminal history points, placing him in criminal history category III, not II. Based on an offense level of 17 and criminal history category III, the applicable sentencing Guidelines Range for the defendant on Count One of the Information is 30 to 37 months' imprisonment. It should be noted that the defendant's criminal history category will likely be even higher at the time of the defendant's sentencing in this case because the defendant is currently scheduled to be sentenced in the state case on June 5, 2023, and is facing a potential term of imprisonment in that case.

D.  The Defendant's Sentencing Submission

On May 25, 2023, the defendant filed a sentencing submission, arguing for a sentence of 24 months' imprisonment, as recommended by Probation in June 2022, to run concurrently with the 84-month sentence in the federal case in Illinois.[2] (Dkt. No. 58.)

**E. A Guidelines Sentence Is Warranted In This Case**

1. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, a court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the

---

[2] Any sentence imposed in this case, however, must, at a minimum, run consecutive to the 24-month term of imprisonment imposed for the aggravated identity theft offense in the federal case in Illinois.

defendant, and the need for the sentence imposed to promote respect for the law, to provide just punishment for the offense, to adequately deter criminal conduct, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a).

2. Discussion

A sentence within the Guidelines Range of 30 to 37 months' imprisonment is necessary in this case based on the nature, circumstances, and seriousness of the offense; the defendant's history and characteristics; and the need for the sentence imposed to provide just punishment, to afford adequate deterrence to this defendant and others, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C). All these considerations weigh in favor of a sentence within the Guidelines Range.

*First*, a Guidelines sentence is necessary to reflect the seriousness of the defendant's offense, and to provide just punishment. In the early morning hours on June 1, 2020, at the height of the COVID-19 pandemic and protests in New York City, the defendant and CC-1 stormed into a Rite Aid store and stole, through the threat of force, thousands of dollars of oxycodone from a pharmacy. CC-1 threatened the pharmacist and claimed to be armed with a gun. Fortunately, no one was injured, but the defendant's and his co-conspirator's conduct and decisions in the early morning hours of June 1 put others in danger. Moreover, the defendant and CC-1 stole oxycodone, a prescribed relative of the lethal drug fentanyl. Thus, whether they planned to consume the pills themselves or to sell it to others, the defendant and his co-conspirator got their hands on a dangerous drug that could have harmed the end user or users. The defendant's conduct in this case was serious and dangerous.

*Second*, the defendant's history and characteristics, and the need to provide just punishment, to afford adequate deterrence to this defendant and others, and to protect the public from further crimes of the defendant, support a Guidelines sentence. At the time of the instant offense, the defendant had already been convicted of certain vehicle-related violations and was being prosecuted for serious fraudulent conduct in the Northern District of Illinois. None of those prior interactions with the criminal justice system, however, deterred the defendant from engaging in the instant offense. After being arrested in this case, the defendant was fortunate to be released on bail. His conduct while out on pretrial release, however, is extremely troubling and warrants a significant incarceratory sentence. First, the defendant was convicted of conspiracy to commit wire fraud and aggravated identity theft in the federal case in Illinois; he has now been sentenced in that case to a total of 84 months in prison. Despite that federal case and this one, and despite being out on pretrial release with strict bail conditions, the defendant engaged in yet another serious offense in August 2022. That crime was arguably even more dangerous than the instant offense. Specifically, on or about August 28, 2022—while out on pretrial release in this case—the defendant carried out an armed carjacking, stealing someone's vehicle from them at gunpoint. The defendant was prosecuted by the Queens District Attorney's office for that crime and pled guilty last month to robbery in the second degree. Clearly, even the notion of facing federal prison time in the Illinois case and in this one did not deter the defendant from engaging in another serious, dangerous crime. The defendant's criminal record, his conduct in this case, and his conduct since pleading guilty in this case warrant a sentence within the Guidelines that runs consecutive to any other sentence he is serving or will serve. Such a sentence is necessary to provide just punishment,

and to sufficiently take into account the defendant's history and characteristics. Moreover, given the defendant's behavior while out on pretrial release, a lengthy term of imprisonment is necessary in order to protect the public from further crimes of the defendant. Finally, a significant term of incarceration is needed to adequately deter the defendant and others from engaging in future violent or other serious crimes in this City and to send a clear message to those who would consider robbing others that such conduct carries serious consequences.

Based on the information in the PSR, there are no mitigating factors that undermine the need for a sentence within the Guidelines Range.

Any sentence that the Court imposes in this case should run consecutive to any other sentences that the defendant is serving. As an initial matter, any sentence in this case must run consecutive to the 24-month mandatory sentence that the defendant is serving on the aggravated identity theft count in the federal Illinois case. Furthermore, given that the conduct in this case is completely separate and apart from the conduct in the Illinois case and in the state carjacking case, a consecutive sentence here is warranted, and necessary, to satisfy the 3553(a) factors in this particular case.

F. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines Range, to run consecutive to any other sentence. Such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Sarah L. Kushner
Assistant United States Attorney
(212) 637-2676

cc:   Robert M. Beecher, Esq. (by ECF)